### AUGUST JOSEPH THALER *et al.*

*v.*

### THE WEST CHICAGO PARK COMMISSIONERS.

*Opinion filed June 18, 1898—Rehearing denied October 6, 1898.*

1. SPECIAL ASSESSMENTS—*first step to charge property is passage of ordinance.* Until an ordinance has been passed providing for the making of an improvement by special assessment no work can be done or expense incurred which can be charged upon property to be afterwards assessed.

2. SAME—*cost of improvement borne by public and that borne by private owners should be separated.* Contracts for an entire improvement, the cost of which is borne partly by the public and partly by owners of property assessed, should contain data from which the actual cost of the part constructed by special assessment can be ascertained, as private owners are entitled to a rebate of the amount of estimate exceeding actual cost.

APPEAL from the County Court of Cook county; the Hon. WILLIAM T. HODSON, Judge, presiding.

I. T. GREENACRE, and SAMUEL J. SLOAN, for appellants.

FRANCIS A. RIDDLE, and H. S. MECARTNEY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The West Chicago Park Commissioners procured the right of way and opened Humboldt boulevard, running north-easterly from Western avenue to Diversey street,

for the purpose of connecting the West Chicago system of parks and boulevards with the Lincoln Park system. On May 12, 1896, an ordinance was passed for the improvement of that part of this boulevard from the east line of Western avenue to the center line of Elsdon avenue. The ordinance provided that the cost of the improvement should be paid by a special assessment, which was thereby ordered. The commissioners then made an estimate of the cost of the improvement, and ordered a petition filed and a proceeding instituted to assess the cost. This ordinance was insufficient, in its specifications of the locality, character and description of the improvement, to authorize any assessment. Contracts for the work were made August 6, 1896, or before that time, and after all the contracts had been let and a good part of the work had been done an amendatory ordinance was passed September 22, 1896, which was the same as the original one, except that it contained a specific description of the improvement which had been attempted. A resolution was also passed reciting that the former estimate was made upon the identical specifications set forth in the amendatory ordinance, and re-adopting such former estimate as the estimate of the cost of the improvement described in the amendatory ordinance. On October 24, 1896, a petition was filed in the county court for assessing the cost on the property benefited, and an assessment roll was filed, to which objections were interposed. This assessment roll was plainly unfair and unequal, and the court ordered it set aside and a new assessment roll made. A new roll was filed December 26, 1896, to which objections were also filed. The legal objections addressed to the court were heard and overruled and the issue as to benefits was thereupon tried by a jury.

That part of the boulevard for which the special assessment was levied is nine hundred and thirty feet long, across a tract of open prairie, ninety-five per cent of which is vacant. The remainder is occupied by poor people liv-

ing in small one-story frame cottages, who are not able
to live in a better locality.   The tract is surrounded by
brick yards, clay holes, reaper works, terra cotta works,
railroad tracks, and a bone factory for making soap, lime
and glue.   Near the property is the Chicago river, which,
according to the testimony, adds to the smoke of facto-
ries and the smells of soap and glue-making an over-
powering stench.   The surroundings are such that while
they continue the neighborhood must be of the same
character as at present, and nothing but the poorer class
of people can be induced to occupy it.   No person able to
own a pleasant home would ever buy a residence or live
there.   Owners of property, residents and real estate
agents testified that the property was not benefited by the
boulevard because it was necessarily occupied by poor
people, who lived there on account of its cheapness, and
did not value a pleasure driveway which they were not
able to use.   On the other hand, a superintendent of spe-
cial assessments for the town of Cicero and three real
estate agents testified that they had examined the as-
sessment roll and the property and thought the benefits
were fairly assessed; that the assessment was about
right, and that the property was benefited to the extent
assessed.   The jury credited the opinions of the witnesses
for objectors, and returned a verdict that the property
was not benefited.   This verdict the court set aside, and
by stipulation the case was then submitted to the court
to be determined upon the evidence already in, which had
been offered before the jury.   The court did not adopt the
evidence on either side, and decided that the property
was benefited but not so much as the assessment roll, and
that it was benefited sixty-five per cent of that amount.
Judgment was entered according to that conclusion.

A great many objections are presented and argued,
and some of them raise serious questions, but there is one
that is fatal to the judgment, and that alone will be con-
sidered.   It was proved by the secretary of the board that

a contract for the grading and filling of the boulevard from Western avenue to Diversey street was made with Sackley & Peterson by the park commissioners about a month before the first attempted ordinance was passed. The first payment for work under that contract was made May 18, 1896, and the contract was let as much as a month before that time, and work was done under it before the attempted ordinance. It has been repeatedly held that no work can be done or expense incurred which can become charged upon the property of the owner, until an ordinance has been passed providing for the making of the improvement and that it shall be paid for by special assessment. The first step to be taken to charge a property owner is the passage of the ordinance which lies at the foundation of the proceeding. *City of Carlyle* v. *County of Clinton,* 140 Ill. 512; *East St. Louis* v. *Albrecht,* 150 id. 506.

Not only was the contract for grading let before the passage of the ordinance, but it included the rest of the boulevard from Elsdon avenue to Diversey street, and there was no way to determine from the ordinance or the contract how much of the grading was done on this part for which the special assessment was levied. All the contracts for the various kinds of work were let for the entire improvement, and while some of them may furnish data for determining the cost of this part of the boulevard, the contract for grading and filling certainly does not. Proprietors who are assessed for an improvement, based upon an estimate of its cost, are not liable for more than the actual cost, and if the assessment exceeds such actual cost they are entitled to a rebate. If other work, which is paid for by general taxation, is included in the contract, there must be some way of keeping separate the cost of that part for which the assessment is levied, or the property owner would be denied a substantial right.

For the reasons given the judgment is reversed and the cause is remanded.    *Reversed and remanded.*